UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

TIMOTHY PERRY, et al.,

    Plaintiffs,

    v.                           Case No. 2:25-CV-90-GSL-JEM

ROBERT LEMAY, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on three separate Motions to Dismiss: the first filed by Defendant Brandon Bohling [DE 19], the second by Defendant K-Plus Technology Solutions, LLC ("K-Plus") [DE 25], and the third by Defendants Robert LeMay, John Wall, and the Town of Long Beach, Indiana (the "Town") [DE 29]. An oral hearing was held on July 23, 2025, to discuss all three motions [DE 47]. Each motion has been fully briefed and is now ripe for ruling. For the reasons below, the Court **GRANTS IN PART, DENIES IN PART** Defendant Bohling's Motion [DE 19], **GRANTS** Defendant K-Plus's Motion [DE 25], and **GRANTS IN PART, DENIES IN PART** Defendants LeMay, Wall, and the Town's Motion [DE 29].

## BACKGROUND

Plaintiffs Timothy Perry and Helen Sheridan brought suit against Defendants LeMay, Wall, Bohling, the Town, K-Plus, and an Unknown Indiana State Police Officer (sued as "Unknown Supervisor") [DE 1, ¶¶ 3–12 (Parties)].[1] Plaintiffs raise a number of state and federal

---

[1] Plaintiffs' Complaint begins with numbered paragraphs 1–12 in the "Jurisdiction & Venue" and "Parties" sections, and then resets to paragraph 1 in the "Facts" section onward. [*See* DE 1 at 1, 3]. Thus, any reference to the first set of numbered paragraphs will be designated as "Parties." If not otherwise specified, all other references to the Complaint will be to the second set of numbered paragraphs.

claims against Defendants, all of which are rooted in the broad assertion that Plaintiffs were allegedly "arrested and prosecuted . . . for the false allegation that they (the Plaintiffs) deleted emails." [*Id.*, ⁋ 50]. The table below details the specific claims raised along with the respective Defendants being sued under each.

| Count | Legal Theory | Defendant(s) Sued |
|:---:|:---:|:---:|
| I | 42 U.S.C. § 1983<br><br>(First and Fourth Amendment Violations) | All<br><br>(except K-2 and the Town) |
| II | 42 U.S.C. § 1983<br><br>(Equal Protection Violation) | All<br><br>(except K-2 and the Town) |
| III | Indiana State Law<br><br>(Respondeat Superior) | The Town |
| IV | 42 U.S.C. § 1983<br><br>(Fourth Amendment Violation) | Bohling |
| V | 42 U.S.C. § 1983<br><br>(Failure to Train and Supervise) | Unknown Supervisor |
| VI | Indiana State Law<br><br>(Willful and Wanton Conduct) | All<br><br>(except the Town) |
| VII | Indiana State Law<br><br>(Negligence) | K-Plus |

*Factual Background*

In 2023, Plaintiff Perry served as Clerk Treasurer for the Town, with Plaintiff Sheridan reporting to him as Deputy Clerk Treasurer. [DE 1, ⁋⁋ 1–3]. As part of their official duties within

the Clerk Treasurer's Office, Plaintiffs were responsible for processing checks for projects commissioned by the Town. [*Id.*, ⁋ 10]. Defendants LeMay and Wall served as board members of the Town Council, with Defendant LeMay acting as the Council's President. [*Id.*, ⁋⁋ 45, 51].

At some unspecified point in 2023, Plaintiff Perry alleges that he publicly objected to, and refused to participate in, the financing of a construction project for a new public safety building and or firehouse, stating the funding request was "fraudulent, suspicious, and nefarious." [*Id.*, ⁋⁋ 11–12, 15]. Plaintiff Perry further alleges that Defendants LeMay and Wall, joined by the Town's Chief of Police, Mark Swistek,[2] publicly demanded that Perry sign a $92,000 financing check to secure a construction bond for the project. [*Id.*, ⁋⁋ 13, 20]. Unable to sway Plaintiff Perry, Defendants LeMay and Wall, along with Chief Swistek, allegedly attempted to compel Plaintiff Sheridan to sign the check. [*Id.*, ⁋⁋ 16–17]. When she too refused, Chief Swistek then allegedly signed the check himself, an act which, according to Plaintiffs, was unauthorized. [*Id.*, ⁋ 20]. Sometime thereafter, around May 2, 2023, Plaintiffs learned of the alleged unauthorized signing of the check and reported the act to the Indiana State Board of Accounts (SBOA). [*Id.*, ⁋ 21]. In addition, at a publicly open board meeting sometime later in the month, Plaintiffs spoke up about Defendants' and Chief Swistek's alleged fraudulent activity. [*Id.*, ⁋ 24].

Plaintiffs further allege that at some point in 2023, they refused to sign Chief Swistek's paycheck, claiming he was illegally holding a second full-time job as the Town's Administrator. [*Id.*, ⁋⁋ 25, 28, 31]. Plaintiffs allege, however, that Defendants LeMay and Wall then forced Plaintiffs to sign and pay Chief Swistek despite the objection. [*Id.*, ⁋ 32]. Plaintiffs allegedly reported Chief Swistek's illegal holding of the two salaried town positions to SBOA, with Perry

---

[2] Although several allegations in Plaintiffs' Complaint are directed toward Chief Swistek, he is not a party to this case.

further requesting an audit of Chief Swistek's pay records. [*Id.*, ¶¶ 33–35]. Plaintiffs also alerted SBOA of their concerns regarding outdated building specifications for the proposed septic system in the new public safety building, stating that Defendant Wall and his brother submitted the outdated specifications to the State and County to obtain the building permit. [*Id.*, ¶¶ 36–38].

In addition to the reports made to SBOA, Plaintiffs claim they reported the alleged misconduct to the FBI, along with concerns that Defendant Wall had illegally bestowed town vendors contracts without properly submitting the contracts for competitive bidding. [*Id.*, ¶¶ 25–32, 41]. Plaintiff Sheridan also alleges she relayed the same to LaPorte County Prosecutor Sean Fagan, informing him that Plaintiff Perry had already reported the misconduct to the FBI. [*Id.*, ¶ 39, 42]. Plaintiffs then allege that as a result of having informed Fagan of the misconduct, as well as for Plaintiffs' general "whistleblowing" activities, Fagan retaliated against Plaintiffs by "his prosecution of [Plaintiffs] as sought by Swistek, et al." [*Id.*, ¶¶ 39, 43–44]. Moreover, after Chief Swistek learned of Plaintiffs reports to SBOA and the FBI, he, "in collaboration with Wall and LeMay," allegedly retaliated against Plaintiffs by contacting the Indiana State Police (ISP) to request the initiation of an investigation into Plaintiffs' conduct.[3] [*Id.*, ¶¶ 45–49]. Specifically, Plaintiffs allege that Chief Swistek falsely advised the ISP that Plaintiffs deleted public emails from each of their town email accounts after Chief Swistek, with Defendant LeMay's approval, asked the Town's IT vendor, Defendant K-Plus, to analyze Plaintiffs' accounts. [*Id.*, ¶ 51].

Sometime afterward, Defendant Bohling, an ISP investigator, filed a probable cause affidavit with the LaPorte Superior Court asserting that Chief Swistek obtained information that

---

[3] Plaintiffs further allege, adjacent to these events, that sometime in 2023, Defendant LeMay "retaliated" against Plaintiff Perry by settling on behalf of the Town, but not Perry, a defamation lawsuit filed against Perry and the Town by a local resident. [DE 1, ¶¶ 4–7]. Plaintiff Perry also alleges that in January 2023, LeMay made defamatory statements against Plaintiff, stating he needed "psychiatric help" and that he was "corrupt" and "incompetent." [*Id.*, ¶¶ 8–9]. No additional allegations are made regarding the defamatory remarks, nor were any claims for defamation raised in the Complaint.

Plaintiffs were exchanging information shortly before Plaintiff Sheridan ended her employment with the Clerk Treasurer's Office. [*Id.*, ¶ 51; DE 30-2]. The affidavit stated that Chief Swistek had reasonable suspicion to believe that Plaintiff had been deleting town email records. [DE 1, ¶ 51; DE 30-2]. Defendant Bohling further asserted that K-Plus had reported to him that it had analyzed Plaintiff Perry's official email account and that he had likely intentionally deleted emails from April 2022 through April 2023. [DE 1, ¶¶ 62, 64, 134; DE 30-2].

Defendant Bohling filed a separate probable cause affidavit regarding Plaintiff Sheridan's involvement, stating that Chief Swistek made the decision to have K-Plus terminate Sheridan's access to her official email account once informed by Plaintiff Perry that Sheridan planned to resign. [DE 1, ¶ 56; DE 30-3]. The affidavit further stated that following Chief Swistek's initial inspection of Plaintiff Sheridan's official email account, it appeared Sheridan had deleted all but fifteen of her emails from the account. [DE 30-3]. Afterward, K-Plus performed its own inspection of Plaintiff Sheridan's official email account and reported to Defendant Bohling that it appeared likely Sheridan had intentionally deleted emails from her "SENT" email file in the same April 2022 to April 2023 window as similarly reported with Plaintiff Perry. [*Id.*]. Following the investigation,[4] Plaintiffs were subsequently arrested and charged with the unlawful destruction of public records. [*Id.*, ¶¶ 50, 56].

*Procedural Background*

On February 25, 2025, Plaintiffs filed their Complaint [DE 1]. Since then, several parties have moved to dismiss. Defendant Bohling first filed his Motion to Dismiss [DE 19] on May 5, 2025, which was soon followed by Defendant K-Plus's Motion to Dismiss [DE 25] on May 16,

---

[4] Defendant Bohling's affidavits state that while the Town's police department initially requested an investigation into the matter of Plaintiffs' email accounts, the department withdrew the request after providing their initial report. [DE 1, ¶ 79; DE 30-2; DE 30-3]. The affidavits then state that the investigation was continued upon the request of the LaPorte County Prosecutor's Office. [DE 1, ¶ 79; DE 30-2; DE 30-3].

2025, and Defendants LeMay, Wall, and the Town's Motion to Dismiss [DE 29] on May 19, 2025.[5] Defendant Bohling's Motion has been fully briefed [DE 20, 32, 40], as was Defendant K-Plus's Motion [DE 26, 33, 42] and Defendants LeMay, Wall and the Town's Motion [DE 30–31, 41]. All three Motions are now ripe for judgment. A hearing was also held on July 23, 2025, to discuss each of the three motions [DE 47]. Having considered the arguments presented in the parties' briefs and at the oral hearing, the Court will now address, in turn, the merits of each Motion.

## LEGAL STANDARD

In response to a complaint, a party may move to dismiss the action asserting that the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint will survive a 12(b)(6) motion if it contains allegations that state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face rather than merely conceivable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This is to say that the plaintiff sufficiently pleads the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (providing that a complaint must "present a story that holds together" and that "[u]nderpinning this framework is a basic rule: a defendant must be given 'fair notice of what the claim is and the grounds upon which it rests'").

---

[5] Of the six named Defendants, only Defendant Unknown Supervisor has not filed or joined in any motions to dismiss.

6

Under this plausibility standard, the Court accepts the well-pleaded factual allegations stated in the complaint as true and views them in the light most favorable to the non-moving party. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 332 (7th Cir. 2019). Legal conclusions and conclusory allegations merely reciting the elements of the claim, however, are not entitled to this presumption of truth. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). After a court excises legal conclusions and conclusory allegations from the pleading, it determines whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* The Seventh Circuit has interpreted the *Twombly-Iqbal* standard to require a plaintiff to "provid[e] some specific facts" to support the legal claims asserted in the complaint. *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). Where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the claim must be dismissed. *Mattice v. Mem'l Hosp. of S. Bend, Inc.*, 249 F.3d 682, 684 (7th Cir. 2001) (alteration omitted).

## DISCUSSION

### I.    Defendant Bohling's Motion [DE 19]

Beginning with Defendant Bohling's Motion [DE 19], he seeks a dismissal of each of the claims against him, with a particular focus on dismissing Plaintiffs' First Amendment claim under Count I. In addition, Defendant Bohling asks the Court to take judicial notice of Plaintiffs' underlying state criminal matters. [*Id.*].

#### A.  Request to Take Judicial Notice

Defendant Bohling first requests that the Court take judicial notice of Cause Numbers 46D04-2401-F6-93 and 46D04-2401-F6-92 in the LaPorte Superior Court, in which Plaintiffs were criminally prosecuted. [DE 19 at 2]. Defendant Bohling asserts that "[a] review of these

dockets demonstrates the Plaintiffs' criminal proceedings referenced throughout the Complaint." [*Id.*].

When addressing an ordinary Rule 12(b)(6) motion, "a court simply examines the allegations in the complaint to determine whether they pass muster." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). When matters "outside the pleadings" are considered, however, Federal Rule of Civil Procedure 12(d) requires that "the motion shall be treated as one for summary judgment" under Federal Rule of Civil Procedure 56. *Id.*; Fed. R. Civ. P. 12(d). Generally, "pleadings" for purposes of a Rule 12(b)(6) motion "include the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. v. Coyle Mech. Supply Co.*, 983 F.3d 307, 312 (7th Cir. 2020). That said, a narrow exception exists in which a court may "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Cap. Corp.*, 128 F.3d at 1080; *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990) (explaining that the exception covers "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

Under Federal Rule of Evidence 201(b), a court may take judicial notice of an adjudicative fact that "that is both 'not subject to reasonable dispute' and either [(1)] 'generally known within the territorial jurisdiction of the trial court' or [(2)] 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'" *Gen. Elec. Cap. Corp.*, 128 F.3d at 1081 (quoting Fed. R. Evid. 201(b)); *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). Defendant Bohling seeks judicial notice of the following entries in the underlying state criminal causes: (1) probable cause affidavits filed

8

by Defendant Bohling against Plaintiffs for charges under Indiana Code Sections 35-44.2-4-7, 5-15-6-8, and 35-44.1-1-1(4); (2) pre-trial diversion agreements entered into by Plaintiffs; and (3) a hearing scheduled for November 3, 2025, to discuss dismissal of Plaintiffs' cases.[6] [DE 20 at 4–5]. Plaintiffs do not contest Defendant Bohling's request in their response brief. [*See* DE 32 at 1].

Here, the items Defendant Bohling seeks to judicially notice are (1) public records, (2) factually uncontested, and (3) derive from sources whose accuracy cannot reasonably be questioned. *See Carter v. Sturgeon*, 643 F. Supp. 3d 862, 865 (N.D. Ind. 2022); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (affirming district court's consideration of public court documents from earlier state case in deciding defendants' motion to dismiss). Thus, the Court can permissibly take judicial notice of these items. In addition, because the probable cause affidavits are a central component of Plaintiffs' Complaint, those affidavits can be considered even beyond the Court's ability to take judicial notice of them. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (explaining that for purposes of a Rule 12(b)(6) or 12(c) motion, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

Accordingly, the Court grants this portion of Defendant Bohling's Motion. [DE 19 at 2].

### B.  Dismissal of Claims

Turning to the second portion of Defendant Bohling's Motion, he first asserts that it is unclear, but vaguely apparent, that he is being implicated under Counts I, II, IV, and VI of Plaintiffs' Complaint. [DE 20 at 6]. He states, however, that there are no factual allegations

---

[6] A review of the state dockets reveals that both Perry's and Sheridan's cases were dismissed on October 28, 2025, pursuant to the acceptance of their pretrial diversion agreements. This hearing on November 3 was therefore canceled.

supporting these claims and that ultimately, all that is alleged by Plaintiffs are legal conclusions which the Court need not accept as true. [*See id.* (citing *Ashcroft*, 556 U.S. at 677)]. Thus, Defendant Bohling asserts that Counts I, II, IV, and VI should be dismissed. [DE 40 at 2 (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful.")]. Defendant Bohling does not, however, develop the arguments to anything but Count I, and because he only specifically requests dismissal as to the First Amendment claim under Count I [*see* DE 19 at 2], the Court will only address that count at this time.

Federal Rule of Civil Procedure 8 does not require Plaintiffs to "set forth the amount and kind of factual matter that [they] might develop during discovery and present at trial." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494 (7th Cir. 2025). It does, however, require that Plaintiffs' Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). To be "entitled to relief," the complaint must contain sufficient *factual allegations* which go beyond mere speculation or conjecture, and which show that the claim for relief is plausible on its face—i.e., the factual allegations, in raising the claim beyond the speculative level, permit the Court to draw a reasonable inference that Defendant Bohling is liable. *Id.* at 495 (citing *Ashcroft*, 556 U.S. at 678–79). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 679). And as is well known within the notice pleading system, "labels and conclusions" boiling down to no more than an "unadorned, the defendant-unlawfully-harmed-me accusation," will not suffice. *Ashcroft*, 556 U.S. at 678.

To begin, Defendant Bohling argues that Plaintiffs did not allege that he was personally involved in Plaintiffs' constitutional deprivations. [DE 40 at 2]. To bring a § 1983 suit, it must be alleged that the defendant "personally participated in the alleged misconduct" giving rise to liability. *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). The constitutional deprivation Plaintiffs appear to have alleged under Count I was the chilling of their right to engage in First Amendment-protected whistleblowing, which seemingly occurred because of the investigation into Plaintiffs, their arrest, and ultimately their prosecution. Defendant Bohling was alleged to have participated in the investigation and arrest of Plaintiffs by both preparing the probable cause affidavits and being the one to arrest Plaintiffs. [*See* DE 1, ⁋⁋ 59–64]. Thus, Plaintiffs have alleged enough to show Defendant Bohling was personally involved.

Plaintiffs also appear to have sufficiently alleged that Defendant Bohling was acting under the color of law. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To act under color of law, the defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Here, Plaintiffs' pled Defendant Bohling "capitalized on his badge and the authority tethered to the badge" as an ISP trooper by preparing the probable cause affidavits and arresting Plaintiffs. [DE 1, ⁋⁋ 56, 59–61]. Plaintiffs also assert that Defendant Bohling was a member of the ISP at all relevant times. [DE 32 at 3].

Thus, having established the prerequisites to bringing their § 1983 claims, the Court now turns to assess the sufficiency of the allegations as to the individual claims being raised. Under

Count I, Plaintiffs assert a violation of both the First and Fourth Amendments. [DE 1 at 12]. It is not made explicitly clear what claims Plaintiffs intended to bring, particularly under the Fourth Amendment. But based on the Court's best interpretation of the Complaint, as well as the allegations presented under Count I, it appears Plaintiffs are bringing two distinct claims under the First Amendment, both concerning retaliation due to whistleblowing activities. For example, Plaintiffs allege their "(a) speech; (b) public opposition to the safety building; (c) public refusal to sign the check; and (d) public reports[/complaints] to SBOA, addressed matters of public interest and concern." [*Id.*, ¶ 90]. They also allege the "political speech was a significant and motivating factor in Defendants' material adverse actions against Plaintiffs[,] including Defendants participating in and driving retaliatory arrests of the Plaintiffs." [*Id.*, ¶¶ 90–91]. Finally, they allege that because no one else has ever been arrested or prosecuted for deleting emails, their arrest and subsequent prosecution had to have been retaliatory. [*See* DE 1, ¶¶ 82–87, 92–94; *see also* DE 31 at 10 (stating the "retaliatory arrest" for deleting emails "is the basis of the [Fourth] Amendment [allegations] found in Count I")]. Thus, the pleadings suggest Plaintiffs are bringing either one (or both) of two possible claims: (1) a First Amendment retaliation claim and/or (2) a First Amendment retaliatory arrest claim.[7]

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (alteration in original) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "If an official takes adverse action against someone based on that forbidden

---

[7] Despite Count I's title stating a violation of both the First and Fourth Amendment, the allegations raised under Count I are entirely packaged as First Amendment pleadings concerning retaliation, including retaliatory arrest, against Plaintiffs' whistleblowing. This is in contrast to an unlawful arrest claim under the Fourth Amendment, which requires showing that "a person is seized by the police without probable cause." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008). Neither the Complaint nor Plaintiffs' briefs allege an absence of probable cause, further indicating to the Court that this was not the intended claim.

motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (quoting *Hartman*, 547 U.S. at 256). To plead a First Amendment retaliation claim, Plaintiffs must show "(1) [they] engaged in activity protected by the First Amendment, (2) [they] suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment was . . . at least a motivating factor in the defendant's decision to take the retaliatory action." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021).

Here, Defendant Bohling argues that Plaintiffs' Complaint fails to demonstrate a connection between his actions and Plaintiffs' "political speech," asserting that no factual allegations are plausibly pled showing he was aware of Plaintiffs' "political speech" and that there is thus insufficient pleading to establish any retaliatory motive. [DE 20 at 6–7]. *See Nieves*, 587 U.S. at 398 (internal citation omitted) (emphasis in original) ("To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.' It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury."); *Morfin v. City of E. Chi.*, 349 F.3d 989, 1005 (7th Cir. 2003) (internal quotation marks and alterations omitted) ("The protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity."). In response, Plaintiffs argue that "[t]he Complaint makes clear that Plaintiffs complain that the seizure of their person, as in retaliatory arrest, was done by Defendant Bohling and others," and consequentially, because "Plaintiffs Sheridan and Perry aver that they were subjected to 'a' First Amendment retaliatory arrest . . . the political speech was the basis of the retaliatory arrest." [DE 32 at 3–4]. But as Defendant Bohling points out, no factual allegations are raised to indicate that he was aware of

13

Plaintiffs' whistleblowing, nor are any allegations made showing that his procurement of the probable cause affidavits was retaliatory. Without more, Plaintiffs allegations are purely conclusory. *See Ashcroft*, 556 U.S. at 678–79 (stating that "pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth").

Moving on, for Plaintiffs to successfully bring a First Amendment retaliatory arrest claim, Plaintiffs "must plead and prove the absence of probable cause for the arrest." *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024) (quoting *Nieves*, 587 U.S. at 402); *see also Lund v. City of Rockford*, 956 F.3d 938, 941 (7th Cir. 2020) (explaining that "in most cases, probable cause to arrest defeats a claim of retaliatory arrest"). Yet the Supreme Court has recognized a narrow exception to this rule, finding that the existence of probable cause will not kill a retaliatory arrest claim where a plaintiff produces "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Gonzalez*, 602 U.S. at 655 (quoting *Nieves*, 587 U.S. at 407).[8]

Here, nowhere in either Plaintiffs' Complaint or their briefs do Plaintiffs allege or argue the absence of probable cause. In fact, Plaintiffs appear to concede the presence of probable cause, arguing instead the *Nieves* exception can—and should—be invoked. [DE 32 at 5 (citing DE 1, ¶¶ 92–95) ("Perry's and Sheridan's facts fit the narrow exception.")]. Instead, to support

---

[8] In recognizing this exception, the Supreme Court found that the general no-probable-cause requirement should be relaxed "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. To illustrate the thinness of this "narrow qualification," the Court provided the example of a "vocal critic of the police who is arrested for jaywalking," finding this example indicative of "the type of relatively benign offense that is 'endemic but rarely results in arrest.'" *Gonzalez*, 602 U.S. at 665 (Alito, J., concurring) (quoting *Nieves*, 587 U.S. at 407). That said, the Seventh Circuit, in adopting Justice Gorsuch's concurring view that the exception should be applied "commonsensically" rather than rigidly, has explained that this is not the only type of evidence that may be considered. *See Lund*, 956 F.3d at 945. Rather, each set of facts must be considered in determining whether objective proof of retaliatory treatment has been established. *Id.*; *see also id.* (quoting *Nieves*, 587 U.S. at 419 (Gorsuch, J., concurring in part and dissenting in part) (explaining that "other kinds of evidence, such as admissions [that an action was taken in retaliation], might be enough to allow a claim to proceed"); *Brewer v. Town of Eagle*, 553 F. Supp. 3d 636, 647–48 (E.D. Wis. 2021) (finding evidence of admissions that defendants acted with retaliatory motive as sufficient for retaliatory arrest claim to survive pleadings stage).

their claim, Plaintiffs assert that no other employee or person in either the Town or the State of Indiana has been charged, arrested, or prosecuted for deleting emails. [DE 1, ¶¶ 82–83, 92–94]. Moreover, Plaintiffs allege that Defendant Bohling may be the only police officer in either the State of Indiana or the nation to have sought the arrest of an employee for deleting emails. [*Id.*, ¶ 84]. Given the Seventh Circuit's decision in *Lund* to review all of the facts presented, as well as permit the consideration of "other kinds of evidence" beyond strict comparators in determining whether the objective standard for retaliatory treatment has been met, Plaintiffs' assertions are enough to sustain their claim at this point in the litigation. *See Lund*, 956 F.3d at 945 (quoting *Nieves*, 587 U.S. at 419 (Gorsuch, J., concurring in part and dissenting in part)). Plaintiffs' First Amendment retaliatory arrest claim therefore survives Defendant Bohling's request for dismissal.

### C.  Conclusion

For the reasons discussed, the Court grants Defendant Bohling's Motion to Dismiss in part [DE 19]. Because Plaintiffs' First Amendment retaliation claim was insufficiently pled, that claim is dismissed as to Defendant Bohling. But because Plaintiffs' First Amendment retaliatory arrest claim was sufficiently pled, that claim, as well as Counts II, IV and VI, remain in the suit.

### II.    Defendant K-Plus's Motion [DE 25]

The Court now turns to Defendant K-Plus's Motion to Dismiss [DE 25], in which it seeks dismissal of Counts VI and VII. Because Plaintiffs concede to the dismissal of Count VI as to K-Plus [DE 33 at 7], the Court will therefore focus solely on Count VII.

Count VII concerns a negligence claim specifically against K-Plus. [DE 1 at 19]. Under Indiana law, an injured party pursuing a claim for negligence must prove: "(1) the defendant owed them a duty; (2) the defendant breached that duty through conduct that fell below the

appropriate level of care; and (3) the defendant's breach caused injury to the plaintiff." *Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 685 (Ind. 2024) (citing *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)). Plaintiffs allege that K-Plus (1) rendered services on behalf of Plaintiffs to correctly diagnose software and hardware issues related to Plaintiffs' email servers, thereby owing them a duty of reasonable care; (2) the risk of harming Plaintiffs increased due to K-Plus's failure to exercise reasonable care; (3) K-Plus breached that duty when it reported Plaintiffs had deleted emails; (4) Plaintiffs were subsequently arrested, handcuffed, and criminally charged as a result of K-Plus's report; and (5) Plaintiffs' harm was, in part, a result of their reliance on K-Plus's services. [*Id.*, ¶¶ 131–37]. Plaintiffs further allege that K-Plus was a proximate cause of their injuries and that Plaintiffs suffered from mental stress and reputational harm. [*Id.*, ¶¶ 138–40]. K-Plus argues exclusively that it cannot be negligent because it did not owe Plaintiffs a legal duty, nor have Plaintiffs sufficiently alleged the presence of one.[9] [DE 26 at 5].

A duty of reasonable care is "not, of course, owed to the world at large, but arises out of a relationship between the parties," particularly where there is a reasonably foreseeable victim and a reasonably foreseeable harm. *Springbrook Vill. Batesville LLC v. Se. Ind. Title Inc.*, 195 N.E.3d 398, 403–04 (Ind. Ct. App. 2022), *trans. denied*. Absent a legal duty there cannot be negligence, and thus no liability. *Goodwin*, 62 N.E.3d at 386. "Whether a duty exists is a question of law for the court to decide." *Id.* at 389. Where "the element of duty has not already been declared or otherwise articulated," *see id.* at 387 (quoting *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462,

---

[9] K-Plus argues, in part, that it did not owe Plaintiffs a duty because Plaintiffs' allegations are directed at "K-2," a non-existent entity, and that Plaintiffs have not named K-Plus as a defendant proper. [DE 26 at 4]. Plaintiffs, however, did name K-Plus as a defendant, [*see* DE 1, ¶ 11 (Parties)], and while Plaintiffs did erroneously refer to K-Plus as "K-2" at numerous points in their Complaint, [*see id.*, ¶¶ 64, 66, 68–69 and pp. 12–13], Plaintiffs not only acknowledge this as a misnomer [DE 33 at 1] but K-Plus was sufficiently aware enough to prepare a defense regardless [DE 26 at 5]. Thus, Plaintiffs' misidentification of K-Plus alone is not enough for dismissal of this claim.

465 (Ind. 2003)), courts balance three factors in determining whether a new duty may be imposed: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the injured person, and (3) public policy concerns. *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). Here, Indiana has not previously established a duty of care for this exact scenario. Recognizing this, K-Plus argues that Indiana's case-specific balancing test for determining the existence of a duty weighs against imposing a duty here. [DE 26 at 4].

### A. Relationship of the Parties

Regarding the first factor, K-Plus begins by arguing that Plaintiffs have failed to allege a relationship that could imply the existence of a duty. [*Id.*]. For example, Plaintiffs allege that the Town's email server is maintained by K-Plus and that in Defendant Bohling's probable cause affidavits, it was K-Plus who informed Defendant Bohling that Plaintiffs intentionally deleted emails. [DE 1, ¶ 1]. But as K-Plus notes, and as discussed above, it is not alleged that K-Plus has any statutory, professional, contractual, or custom-based relationship with Plaintiffs. [DE 26 at 5]. K-Plus also highlights that it is the Town's email server—not Plaintiffs'—which it is alleged to maintain, and that Plaintiff's Complaint contains no allegations that Plaintiffs themselves requested a diagnosis of any software or hardware issues related to the email server. [*Id.*]. Based on this, K-Plus argues the first factor must weigh against imposing a duty. [*Id.*].

Plaintiffs concede that K-Plus contracted with the Town. [*See* DE 33 at 2, 5]. But rather than argue that K-Plus also contracted with them directly, Plaintiffs appear to raise a new theory not previously established in the Complaint: that Plaintiffs were third-party beneficiaries of K-Plus's contract with the Town. [*See id.* at 2 ("K-Plus had to know that the e-mail system it set-up and monitored, was for the purpose of Town of Long Beach employees . . . [to] communicate by e-mail.")]. Plaintiffs rely on the Indiana's Supreme Court's decision in *Walker v. Rinck*, 604

N.E.2d 591, 595 (Ind. 1992), for the proposition that a professional may owe a duty to the beneficiary of a consensual relationship "where the professional has actual knowledge that the services being provided are, in part, for the benefit of such third persons." But as K-Plus notes, Plaintiffs do not allege any facts supporting such a theory. [*See* DE 42 at 2–3].

Plaintiffs' Complaint exerts vague allegations that (1) K-Plus "should have recognized that careful execution of its undertaking was necessary for [Plaintiffs'] protection," (2) K-Plus owed Plaintiffs a duty to correctly diagnose issues related to Plaintiffs' emails, and (3) Plaintiffs' harms stemmed from the services rendered by K-Plus. [DE 1, ¶¶ 131–33]. It is unclear, though, whether Plaintiffs actually intended to raise a third-party beneficiary claim of negligence based on these allegations. Rather, these allegations suggest more of a direct relationship-based negligence claim. The greatest indication of this is that Plaintiffs do not allege the most critical component of a third-party beneficiary theory: K-Plus's awareness, either contractually or through direct communication from the Town, that Plaintiffs were intended as beneficiaries. [DE 42 at 2]. Accordingly, to the extent that Plaintiffs sought to bring new facts in their brief supporting their third-party beneficiary theory, those facts would be inconsistent with the Complaint, and therefore not capable of consideration at this time. *See Martinez v. City of Hammond*, 2025 WL 2959034, at *8 (N.D. Ind. Oct. 17, 2025) (cleaned up) (emphasis added) (quoting *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("[T]he Seventh Circuit has noted that 'facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint *so long as they are consistent with the allegations in the complaint*.'").[10] Because Plaintiffs therefore do not offer an otherwise suitable basis for

---

[10] Plaintiffs also allege for the first time that K-Plus, in informing Chief Swistek that Plaintiffs deleted emails from the Town's server, tortiously interfered with the business relationship between Plaintiffs and the Town. [DE 33 at 3]. Although Plaintiffs state they should have alleged this claim in the Complaint, they nonetheless proceed to raise it in their response brief and argue its viability. [*Id.* at 3]. This tactic is procedural improper. Plaintiffs cannot perform a

why their situation requires the finding of a duty, the first factor therefore weighs against such a finding.

### B. Foreseeability

Moving to the second factor, K-Plus contends that the foreseeability component must also weigh against the finding of a legal duty. [DE 26 at 6]. Foreseeability for purposes of the duty analysis is a lesser inquiry than foreseeability in the context of determining proximate cause, requiring only an evaluation of the broad type of plaintiff and harm involved. *Goodwin*, 62 N.E.3d at 390–91. But because any outcome is theoretically possible, and thus "foreseen," a duty will not arise simply because a particular outcome is "sufficiently likely" to occur. *Id.* at 392. Rather, to determine whether an act is foreseeable for purposes of the duty analysis, the Court must assess "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Id.* (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2006)).

Here, K-Plus argues that the broad type of plaintiff at issue is a contracting party's employee, while the harm is the probability of said employee being arrested and criminally charged in retaliation for whistleblowing. [DE 26 at 6]. K-Plus contends that such an outcome is unforeseeable, particularly in the context of an IT company performing routine maintenance and inspection, such as locating and restoring deleted emails, at the request of its customer. [*Id.*]. In response, Plaintiffs argue that because K-Plus made "spurious allegations of [wrongdoing]," K-Plus "was able to foresee the dangerous consequences of such statement[s] as much as it could foresee that its software would and could present false information." [DE 33 at 5]. Plaintiffs also

---

back-alley amendment of their Complaint by raising new claims in response to K-Plus's Motion to Dismiss. *See Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (alteration in original) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . .").

argue that dismissal is inappropriate because "[t]he foreseeability of an intervening cause, and thus, whether defendant's conduct is the proximate cause of the plaintiff's injuries, is generally a question of fact for the jury to decide." [*Id.* (quoting *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004))]. But as K-Plus notes [DE 42 at 3], Plaintiffs rely upon the wrong standard for foreseeability as the Indiana Supreme Court expressly adopted an analytical framework distinguishing the foreseeability analysis for duty from that used for determining proximate causation. *See Goodwin*, 62 N.E.3d at 391. Moreover, Plaintiffs' remaining argument is conclusory and does not provide any estimate for *how* or *why* the performance of K-Plus's routine duties would result in their subsequent arrest and criminal prosecution.

Thus, the second factor also weighs against the finding of a duty. *Cf. Williams v. Wireless Cingular*, 809 N.E.2d 473, 478 (Ind. Ct. App. 2004) ("Although we agree that it may be foreseeable that a person who is using a cellular phone while driving might be in an accident, we do not agree with the leap in logic [plaintiff] urges us to make that it is likewise foreseeable to a legally significant extent that the sale of the phone would result in an accident."), *trans. denied*.

### C.  Public Policy Concerns

Finally, turning to the third factor, K-Plus asserts that public policy concerns disfavor the existence of a duty in this context. [*Id.*]. "Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Springbrook*, 195 N.E.3d at 404 (quoting *Beckom v. Quigley*, 824 N.E.2d 420, 428 (Ind. Ct. App. 2005)). In assessing this factor, the focus is on "who is, or should be, in the best position to prevent [an] injury and how society should allocate the costs of such injury." *Est. of Staggs v. ADS Logistics Co.*, 102 N.E.3d 319, 326 (Ind. Ct. App. 2018) (alteration in original), *trans. denied*. Here, K-Plus asserts that because Plaintiffs allege

retaliation by governmental officials for Plaintiffs' whistleblowing, K-Plus is not in the best position to prevent Plaintiffs' alleged injury, nor would it be appropriate for K-Plus to bear such costs. [DE 26 at 6]. *See Springbrook*, 195 N.E.3d at 404 ("Imposing a duty on title insurers to third parties identified in land records with whom they have no relationship would severely limit their ability to provide title services. Therefore, we conclude that it would be contrary to public policy to impose such a duty.").

In response, Plaintiffs argue, again with conclusory assertions, that public policy concerns support the finding of a duty because K-Plus (a) "knew when it installed the software, it did so negligently[,] and that as a result, it (the software) would present false positives at some point in time, as is the landscape—the false positive of deleted emails"; and (b) it "could easily foresee the fall-out and severe consequences (at a minimum, termination of a user's employment . . .) to befall the users of the software by K-Plus [erroneously] asserting (negligently interpreting its software) that emails were deleted by certain people" despite knowing the statements were "categorically false." [DE 33 at 6–7]. These allegations do not appear in the Complaint, nor do they appear consistent with those presently in the Complaint. *See Dart*, 803 F.3d at 311. Plaintiffs also do not offer any sound public policy reasons suggesting that K-Plus, and not those who actively participated in Plaintiffs' prosecution, would be the most appropriate to hold accountable under these facts. *Cf. Cingular Wireless*, 809 N.E.2d at 478 ("It is foreseeable to some extent that there will be drivers who eat, apply [makeup], or look at a map while driving and that some of those drivers will be involved in car accidents because of the resulting distraction. However, it would be unreasonable to find it sound public policy to impose a duty on the restaurant or cosmetic manufacturer or map designer to prevent such accidents. It is the

driver's responsibility to drive with due care."). Thus, the third factor weighs against finding a duty of care.

### D.  Conclusion

Because Plaintiffs have not sufficiently alleged that K-Plus owed them a duty of care, this claim fails. Accordingly, Count VII is dismissed. And because Plaintiffs conceded to the dismissal of Count VI, K-Plus is dismissed from this suit.

### III.    Defendants Wall, LeMay, and the Town's Motion [DE 29]

Finally, the Court turns to Defendants LeMay, Wall, and the Town's Motion to Dismiss [DE 29], whereby each Defendant seeks dismissal of all counts pled against them (Counts I–III, VI).

As an initial matter, Defendants attach three exhibits to their supporting memorandum: (1) the probable cause affidavit filed as part of Plaintiff Perry's state criminal case [DE 30-2], (2) the probable cause affidavit filed as part of Plaintiff Sheridan's state criminal case [DE 30-3], and a notice of tort claim filed by Plaintiff Perry [DE 30-4]. Defendants request that the Court take judicial notice of these items. [DE 30 at 4 n.4]. For the same reasons discussed with regard to Defendant Bohling's request to take judicial notice of Plaintiffs' underlying criminal dockets, *see supra* Section I.A., the Court finds it appropriate to do the same with regard to the probable cause affidavits. The probable cause affidavits are (1) both public records and part of the state dockets to which the Court has taken judicial notice, (2) central to the core claims in the Complaint, and (3) referenced extensively in the Complaint. [*See* DE 1, ¶¶ 51, 56, 62, 64, 72, 79, 116]. *See Williamson*, 714 F.3d at 436 (explaining that "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is

properly subject to judicial notice"). Furthermore, under APRA, a tort claim notice becomes accessible to the public upon its filing with a municipal defendant, such as a political subdivision like the Town, and thus becomes a "public record" subject to judicial notice. *See* Ind. Code § 5-14-3-2(q)(2)(A)–(B) (defining "public agency" to include, among others, any city, town, department, authority of a town, or political subdivision); (r) (defining "public record" as "any writing, paper, . . . or other material that is created, retained, maintained, or filed by or with a public agency . . . ."). Plaintiffs do not oppose Defendants' request to take judicial notice of these items in their response brief, nor do they contest the indisputability of them either. *See Hennessy*, 69 F.3d at 1354; Fed. R. Evid. 201(b). Thus, the Court finds it appropriate to take judicial notice of these attachments.

Having addressed this point, the Court turns to assess Defendants' Motion.

## A. Counts I and II: Constitutional Claims

Defendants LeMay and Wall focus particularly on Plaintiffs' failure to allege that (1) Defendants were personally involved in the claimed constitutional deprivations and (2) Defendants LeMay and Wall were acting under color of law when the claimed deprivations occurred. [DE 6–12]. The Court will address these arguments in tow.

### 1. Personal Involvement

"[I]ndividual liability under § 1983 . . . 'requires personal involvement in the alleged constitutional deprivation.'" *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). Put differently, "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864,

23

869 (7th Cir. 1983), *cert. denied*, 513 U.S. 1128 (1995)). To establish personal involvement, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert*, 851 F.3d at 657. Direct participation in the deprivation is not required, so long as (a) the official acted or failed to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or (b) the conduct causing the deprivation occurred at the official's direction or with their knowledge and consent. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)).

Here, Defendants LeMay and Wall argue that they were not personally responsible for Plaintiffs' arrest and prosecution. [DE 30 at 7]. Specifically, Defendants LeMay and Wall assert that they did not conduct, influence, or otherwise take part in the investigations of Plaintiffs. [*Id.* at 7–8]. To support this argument, Defendants LeMay and Wall first point out that the only allegation Plaintiffs raise that is directed toward either LeMay or Wall and related to the investigation is when Chief Swistek asked LeMay whether K-Plus should be contacted to analyze Plaintiffs' email accounts. [*Id.* at 7; DE 1, ⁋ 51]. Second, Defendants note their lack of involvement in the investigation by highlighting the actual focus of Plaintiffs' allegations in the Complaint, which state that (1) Chief Swistek called the ISP to initiate the investigation [DE 1, ⁋ 49], (2) Defendant Bohling prepared the probable cause affidavits [*id.*, ⁋⁋ 51, 56, 62–72; DE 30-2; DE 30-3], (3) Defendant K-Plus supplied the information supporting the probable cause affidavits [DE 1, ⁋ 64; DE 30-2; DE 30-3], and (4) Prosecutor Fagan authorized the criminal charges and spearheaded the subsequent prosecution of Plaintiffs [DE 1, ⁋⁋ 50, 78–79]. Finally, Defendants LeMay and Wall rely on caselaw to support the proposition that simply urging a police officer to arrest someone, without more, does not give rise to liability under § 1983. [DE 30 at 7]. *See Spiegel v. Cortese*, 196 F.3d 717, 726 (7th Cir. 1999) (finding plaintiff failed to

24

allege personal involvement of department of aging employee for purposes of plaintiff's unconstitutional arrest claim where the allegations only state that employee "urged" officer to arrest plaintiff but not that employee had authority herself to arrest); *Hines v. City of Mishawaka*, 2022 WL 16745031, at \*3 (N.D. Ind. Nov. 4, 2022) (finding plaintiff failed to allege personal involvement against police chief and mayor for purposes of Fourth Amendment claims where complaint included only "vague references to 'actions and/or inactions'" by police chief relating to police department policies and practices).

Plaintiffs argue that Defendants LeMay and Wall caused their First Amendment deprivation, reciting various allegations in the Complaint which they claim prove Defendants' involvement. [DE 31 at 4]. First, Plaintiffs point to where they allege that Defendants LeMay and Wall joined Chief Swistek in demanding that Plaintiff Perry sign the $92,000 check needed to secure the bond for the public safety building, and when Plaintiff Perry purportedly refused to do so, Defendants made various comments to Perry at a public meeting, including (a) "you need psychiatric help"; (b) "you are corrupt"; and (c) "you are incompetent." [*Id.* (quoting DE 1, ¶¶ 9, 13)]. Second, Plaintiffs allege that Defendants LeMay and Wall, along with Chief Swistek, physically confronted Plaintiff Sheridan in order to get her to sign the $92,000 check. [*Id.* at 5 (citing DE 1, ¶¶ 13–16, 19)].

Third, Plaintiffs recite paragraphs alleging Chief Swistek's receipt of two salaries, Plaintiffs' refusal to sign off for both payrolls, Defendants LeMay and Wall's forcing of Perry to sign the check, and Plaintiffs' subsequent report to SBOA. [*Id.* at 6 (citing DE 1, ¶¶ 25–33)]. Fourth, Plaintiffs state, "Thereafter, so angry and consistent with Defendant's [sic] Bohling's two probable cause affidavits . . . , each holding that LeMay stated that Plaintiffs were deleting emails when LeMay [sic] that such statement was false." [DE 31 at 4]. Fifth, to rebut the

assertion that all allegations are solely directed to Chief Swistek, Plaintiffs recite back to

paragraph 49 of the Complaint, stating:

> Swistek, in collaboration with Wall, and LeMay, in retaliation for all of the foregoing whistleblowing (inclusive of First Amendment protected speech) by the Plaintiffs (and especially on the heels of the reports (plural) to [the] SBOA and the Federal Bureau of Investigation as well as strong likelihood they knew that Sheridan was confiding in Fagan), Chief Swistek contacted the Indiana State Police (ISP) with an objective of causing the ISP to harm the Plaintiffs.

[*Id.* at 7 (quoting DE 1, ⁋ 49)].

Finally, Plaintiffs allege the following from Plaintiff Perry's probable cause affidavit:

> According to the initial report and investigation provided by Chief Swistek, on May 18, 2023, the Long Beach Town Council members and Chief Swistek received an e-mail from the Town Clerk-Treasurer Tim Perry that his Deputy Clerk Helen Sheridan was preparing for "Departure" from employment. *The report noted that on Friday, May 19, Chief Swistek spoke with Town Council President Dr. Robert LeMay. Chief Swistek explained that Mrs. Sheridan and Mr. Perry were exchanging information recently related to the Public Safety Building and he had a reasonable suspicion that he may also be deleting town e-mail records through his town issued e-mail account and that he would like to examine it. Dr. LeMay agreed with Chief Swistek, and contact was made with K-Plus to allow Chief Swistek access to examine Clerk Perry's e-mail account*. Upon a brief examination by Chief Swistek it also appeared that the e-mail account of Clerk Perry also had deleted files and a request was made to K-Plus to restore any information that may have been deleted.

[DE 1, ⁋ 51 (emphasis added); *see also* DE 30-2 (emphasis added)].[11]

Regarding Defendant LeMay, it appears Plaintiffs have sufficiently linked him to the

underlying deprivation. Paragraph 51 of the Complaint alleges that LeMay spoke with Chief

Swistek before contacting K-Plus to review Plaintiffs' emails. It is never explained what capacity

Chief Swistek was acting in (chief of police or town administrator), and thus whether he needed

permission from LeMay to contact K-Plus. Still, there is a supposed inference that LeMay either

---

[11] Plaintiff Sheridan's probable cause affidavit provides further background for Chief Swistek's interest in Plaintiffs' email accounts. According to the affidavit, the Town's Council members and Chief Swistek received an email from Plaintiff Perry that Plaintiff Sheridan would be preparing for departure from the Clerk-Treasurer' Office. [DE 30-3]. The affidavit then says, "After learning of Mrs. Sheridan's pending resignation, Chief Swistek made the decision to contact their Information Technology vendor K-Plus to terminate her access to the Town e-mail account to access invoices, state reports, financial statements, vendor communication, etc." [*Id.*].

directed Chief Swistek to contact K-Plus or, at the very least, consented to contacting K-Plus. This is supported by the allegation that Chief Swistek discussed the need to access Plaintiffs' email with LeMay before contacting K-Plus, in which LeMay "agreed." *See Rowe*, 761 F.2d at 369. Furthermore, paragraph 49 states that Chief Swistek, in collaboration with LeMay, contacted ISP to initiate the investigation. Thus, the Complaint ultimately provides enough to plausibly infer that LeMay was involved with the underlying investigation resulting in Plaintiffs' alleged constitutional deprivations.

As to Defendant Wall, Plaintiffs have not sufficiently linked him to the underlying deprivation. The only time Plaintiffs' Complaint mentions Defendant Wall with respect to the investigation (or anything occurring afterward) is in paragraph 49, in which Plaintiffs allege that Wall collaborated with Chief Swistek and Defendant LeMay to contact the ISP. [DE 1, ¶ 49]. Yet the Complaint never explains how he collaborated with these individuals. Defendant Wall is also never mentioned in either of the probable cause affidavits. Without more, it cannot be said that Plaintiffs have provided Defendant Wall with sufficient notice as to his involvement in the alleged constitutional deprivations.

Thus, Plaintiffs have not sufficiently alleged personal involvement with regard to Defendant Wall as required for Plaintiffs' constitutional claims. Counts I and II are therefore dismissed as to him.

### 2. *Color of Law*

Having found that Plaintiffs made plausible allegations of personal involvement with regard to Defendant LeMay, the next question is whether Plaintiffs plausibly alleged that LeMay acted under color of law when the constitutional deprivations occurred.

"To state a § 1983 claim, [a plaintiff] must sufficiently allege that [the defendant] was acting under color of state law, . . . that is, exercising power . . . made possible only because [the defendant was] clothed with the authority of state law[.]" *Reardon v. Danley*, 74 F.4th 825, 828 (7th Cir. 2023) (internal citations and quotation marks omitted). It is well understood within this circuit that an action is not committed "under color of state law" simply because it was committed by a public officer or employee. *See First Midwest Bank v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 389 (mem.). Rather, an act is deemed to be taken "under color of state law" when "it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (quoting *Honaker v. Smith*, 256 F.3d 477, 484–85 (7th Cir. 2001)). This, in essence, requires that the alleged illegal act be "related to in some way to the performance of the duties of the state office." *Id.*

Defendant LeMay argues Plaintiffs failed to allege that he took any action involving an exercise of "powers traditionally exclusively reserved to the State." [DE 30 at 11 (quoting *Jackson v. Metro Edison Co.*, 419 U.S. 345, 352 (1974)]. LeMay continues by contending that Plaintiffs' Complaint fails to establish state action under the litany of tests developed by the Seventh Circuit. [*See id.* at 8–12 (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823–24 (7th Cir. 2009) (categorizing tests for determining state action as the (1) "symbiotic relationship" test, (2) the state "command and encouragement" test, (3) the "joint participation" doctrine, and (4) the "public function" test)). The issue with Defendant LeMay's argument, however, is that the sources he relies on—*Jacks*on and *Rodriguez*—are concerned with determining whether state action occurred through a "private actor," which appears inapplicable here. Rather, Plaintiffs allegations strongly infer that Defendant LeMay acted within his official

28

capacity as Board President of the Town Council, and thus his involvement was related to his official duties. To this end, it does in fact appear Plaintiffs plausibly pled conduct committed under color of law. Therefore, dismissal on this ground is inappropriate.

Ultimately, the basis for Defendants' motion concerned only the prerequisites to bringing a claim under § 1983. Because Defendants did not address the sufficiency of the pleadings as to the constitutional claims themselves, the Court need not go any further. Accordingly, the Court finds that Plaintiffs have sufficiently pled that Defendant LeMay was both personally involved and acting under the color of law when Plaintiffs' constitutional deprivations occurred. He therefore remains implicated as to the claims raised under Counts I and II. But because Plaintiffs failed to plausibly plead personal involvement as to Defendant Wall, both Counts I and II are dismissed as to him.

### B.  Count VI: Willful and Wanton Conduct Claim

Looking next to Count VI, Defendants LeMay and Wall argue that Plaintiffs' state law claim for willful and wanton conduct should be dismissed. To support this position, Defendants present two arguments: (1) Plaintiffs fail to sufficiently allege a willful and wanton conduct claim and (2) Plaintiffs' claim is barred for failing to comply with the Indiana Tort Claim Act's (ITCA) notice requirement. [DE 30 at 12–15]. Because compliance with ITCA is a procedural precedent Plaintiffs must prove before bringing suit, and because Defendants have raised noncompliance as an affirmative defense, the Court will address this issue first. *See Waldrip v. Waldrip*, 976 N.E.2d 102, 110 (Ind. Ct. App. 2012) (citing *Brown v. Alexander*, 876 N.E.2d 376, 383 (Ind. Ct. App. 2007), *trans. denied*). "The question of compliance is not a question of fact for the jury but ultimately a legal determination to be made by the court." *Murphy v. Ind. State*

*Univ.*, 151 N.E.3d 311, 317 (Ind. Ct. App. 2020) (quoting *Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988)).

"The Indiana Tort Claims Act provides that a tort claim against a government entity is barred unless the claimant provides the entity with notice of the claim within 180 days of the loss." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013) (citing Ind. Code § 34-13-3-8). As explained by the Indiana Supreme Court, a tortfeasor bringing suit against a governmental entity:

> "[M]ust describe in a short and plain statement the facts on which the claim is based," including "the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice."

*Id.* (quoting Ind. Code § 34-13-3-10). This requirement applies equally to government employees sued within their individual capacity. *See Myers v. Maxson*, 51 N.E.3d 1267, 1278 (Ind. Ct. App. 2016), *trans. denied*; *Connolly v. Wilkening*, 2025 WL 1014729, at *4 (N.D. Ind. Apr. 4, 2025) ("The Indiana Tort Claims Act provides that a plaintiff must provide a notice to the political subdivision and its employees within one hundred and eighty (180) days of the loss.").[12] The purpose behind Indiana's tort claim notice requirement is "to ensure that government entities

---

[12] Notice is required for individual capacity defendants when the alleged act or omission causing the plaintiff's harm is within the scope of the defendant's employment. *Myers*, 51 N.E.3d at 1278. This is because ITCA provides substantial immunity for conduct committed within a public employee's scope of employment "to ensure that public employees can exercise the independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Id.* at 1278–79. While the determination of whether an act or omission is committed within the defendant's scope of employment is ordinarily a question of fact, the issue may be determined as a matter of law where the answer is conclusively demonstrated by the materials provided to the court. *See Bushong v. Williams*, 790 N.E.2d 467, 473 (Ind. 2003); *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018) (finding that where the facts are undisputed, the determination of whether a tortious act was (or was not) within the scope of employment can be made as a matter of law). Here, the allegations directed toward Defendants LeMay and Wall insinuate they acted within the scope of their roles as Town Council members both before the investigation when discussing the signing of the $92,000 check and Chief Swistek's paycheck, as well as at the beginning of the investigation when LeMay allegedly permitted or condoned Chief Swistek's inspection into Plaintiffs' emails. [*See* DE 1, ¶¶ 13, 17, 45–46, 49, 51, 106]. Plaintiffs also do not argue in their brief that Defendants LeMay and Wall acted outside the scope of their employment. [*See* DE 31]. Thus, when taking the allegations in the Complaint as true, as well as the arguments presented to the Court, the allegedly harmful acts were committed within the scope of Defendants' employment. *See Cox*, 107 N.E.3d at 460. Notice is therefore required.

have the opportunity to investigate the incident giving rise to the claim and prepare a defense." *Schoettmer*, 992 N.E.2d at 706. So long as the purpose of ITCA is being satisfied, its procedural notice requirement should not function as "a trap for the unwary." *Id.* (quoting *Galbreath v. City of Indianapolis*, 255 N.E.2d 225, 228 (Ind. 1970)).

Beginning with Plaintiff Sheridan, Defendants argue that her claim under Count VI should be dismissed because she did not file a tort claim notice to any of the Defendants. [DE 30 at 14]. Plaintiff Sheridan concedes that she did not comply with ITCA's notice requirement as she did not file a tort claim notice with any of the named Defendants within the 180-day window. DE 31 at 16]. She concedes, however, only to the dismissal of Count VI as to the Town. [*Id.*]. Neither Plaintiff sued the Town under Count VI, so it is unclear if she is erroneously referring to the Town under Count III or whether she instead meant Defendants LeMay and Wall. Either way, her failure to file the requisite tort claim notice with Defendants LeMay and Wall bars her state claim against them. *See Schoettmer*, 992 N.E.2d at 706 (citing I.C. § 34-13-3-8).

As for Plaintiff Perry, while he did file a tort claim notice with the Town [*see* DE 30-4], he did not file a tort claim notice with Defendants LeMay or Wall. Because Plaintiff Perry alleges that Defendants LeMay and Wall acted within the scope of their employment when they harmed him, notice was required. *See Myers*, 51 N.E.3d at 1278. Failure to send notice to Defendants individually or indicate the intent to sue LeMay and Perry in the Town's notice defeats the purpose of ITCA's notice requirement, which is to permit Defendants to investigate the incident giving rise to Plaintiff's claim and prepare a defense. *See Schoettmer*, 992 N.E.2d at 706.

Plaintiffs do not directly address the noncompliance issue in their response brief. [DE 31]. Instead, Plaintiffs assert that "[t]he issue is 42 USC 1983 and that Indiana law is applied."

31

[*Id.* at 15]. Plaintiffs thereafter state that "[t]he counts against Lemay and Wall are federal (42 USC 1983) not state claims . . . . Additionally, as to willful and wanton, there is no law denying Plaintiffs a right to argue that pursuant to 1983 the Defendants' actions were willful and wanton." [*Id.* at 16 (emphasis omitted)]. Plaintiff's statements are confusing on several levels, but it appears he is alleging that compliance with ITCA is unnecessary because he is raising a willful and wanton conduct claim under federal law. This is incorrect.

First, a willful and wanton conduct claim cannot be brought under § 1983 because "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). This is to say that "[o]ne cannot go into court and claim a 'violation of § 1983'— for § 1983 by itself does not protect anyone against anything." *Id.* (quoting *Chapman v. Hous. Welfare Rts. Org.*, 441 U.S. 600, 617 (1979)). Second, as Defendants correctly point out, Plaintiffs do not cite to any existing caselaw or other federal statutes recognizing a willful and wanton claim. [DE 41 at 9]. In fact, it can be plainly seen from other decisions within this circuit that where a plaintiff raises both a § 1983 and a willful and wanton conduct claim, the former is treated under federal law while the latter is treated under state law. *See, e.g.*, *Wilson v. City of Springfield*, 449 F. Supp. 3d 826, 834 (C.D. Ill. 2020); *Doe v. Bd. of Educ. of City of Chi.*, 611 F. Supp. 3d 516, 540 (N.D. Ill. 2020); *Fluker v. Cnty. of Kankakee*, 945 F. Supp. 2d 972, 993 (C.D. Ill. 2013); *Rhyan v. City of Waukegan*, 819 F. Supp. 2d 755, 758 (N.D. Ill. 2011). Finally, Plaintiffs' attempt to escape ITCA's compliance requirement by framing his claim as one of federal jurisprudence is unconvincing, particularly when Plaintiff **explicitly** titles their willful and wanton conduct claim under Count VI as being "[u]nder Indiana Law." [DE 1 at 18].

Therefore, Plaintiffs Perry and Sheridan's noncompliance with ITCA results in their state law claim being barred. Count VI is therefore dismissed as to Defendants Wall and LeMay.[13]

### C. Count III: Respondeat Superior Claim

Lastly, the Town argues that Count III should be disposed of because Plaintiffs do not have an underlying state claim to tether a respondeat superior claim. Indiana recognizes that "for respondeat liability to attach, there must also be underlying liability of the acting party." *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 109 (Ind. Ct. App. 2014), *trans. denied*; *see also Roberts v. Chaney*, 465 N.E.2d 1154, 1160 (Ind. Ct. App. 1984) (finding that plaintiff could not recover from driver's employer where plaintiff could not recover from the driver individually), *overruled on other grounds*, *Williams v. Crist*, 484 N.E.2d 576 (Ind. 1985). Plaintiffs conceded to the dismissal of Plaintiff Sheridan's claim under Count III because she did not file a notice of tort claim as required under ITCA, but argue that dismissal of Count III outright is unwarranted since Plaintiff Perry did file a tort claim notice. [DE 31 at 16]. But as explained above, that tort claim notice is also deficient and therefore incapable of serving ITCA's express purpose.

Accordingly, because Plaintiffs' state law claim against the individual defendants was dismissed, Plaintiffs' respondeat superior claim against the Town is barred. Count III is therefore dismissed.

### D. Conclusion

Plaintiffs have failed to state a cognizable claim against either Defendant Wall or the Town. Therefore, those Defendants are dismissed from this suit. As to Defendant LeMay, Plaintiffs have sufficiently pled their constitutional claims under Counts I and II, and thus those

---

[13] Because the Court finds Count VI procedurally barred, the Court need not reach Defendants' sufficiency of the pleadings argument.

claims are sustained. Plaintiffs' state claim under Count VI, however, is dismissed as to him for insufficient pleading.

### IV.    Remaining Defendant: Unknown Supervisor

Finally, the Court addresses the only other remaining party in this suit not to have joined any of Defendants' motions: Defendant Unknown Supervisor. A review of the docket indicates that this party has not entered an appearance, nor have they been appropriately served. Furthermore, it has not been shown that (a) Plaintiffs' Complaint contains sufficient allegations permitting this Defendant's identification following discovery **and** (b) Plaintiffs have made reasonable efforts to learn the name of this Defendant before filing suit. *See O'Neal v. Unknown Superamerica Emps.*, 2006 WL 5925948, at *1 (W.D. Wis. Mar. 14, 2006) (citing Fed. R. Civ. P. 11(b)(3) (pleadings may be presented to the Court only upon reasonable investigation of underlying facts). For these reasons, this Defendant will be dismissed with prejudice absent a showing of good cause by Plaintiffs within fourteen (14) days of entering this order. *See* Fed. R. Civ. P. 4(m). Furthermore, because Defendant Unknown Supervisor is the only Defendant sued under Count V, that count will be dismissed as well.

### <u>CONCLUSION</u>

For the reasons explained above, the Court holds as follows:

- Defendant Bohling's Motion to Dismiss [DE 19] is **GRANTED IN PART, DENIED IN PART**. The Motion is granted as to Plaintiffs' First Amendment retaliation claim under Count I, and thus that claim is dismissed without prejudice as to Defendant Bohling. The Motion is denied as to Plaintiffs' First Amendment retaliatory arrest claim under Count I, and thus that claim is sustained. Finally, because Defendant Bohling did not develop arguments as to Counts II, IV, and VI, any claims raised under those counts shall remain as to him.

- Defendant K-Plus's Motion to Dismiss [DE 25] is **GRANTED**. All claims against K-Plus are hereby dismissed without prejudice. K-Plus is therefore dismissed from this suit without prejudice.

- Defendants LeMay, Wall and the Town's Motion to Dismiss [DE 29] is **GRANTED IN PART, DENIED IN PART**. The Motion is granted with respect to all claims pled against Defendant Wall and the Town. Those claims are hereby dismissed without prejudice. Accordingly, Defendant Wall and the Town are dismissed from this suit without prejudice. As to Defendant LeMay, the motion is denied as to Plaintiffs' constitutional claims under Counts I and II, and thus those claims shall remain as to him. The Motion is granted as to Plaintiffs' state law claim under Count VI, and thus that claim is hereby dismissed as to him without prejudice.

- Defendant Unknown Supervisor will be dismissed **with prejudice** unless good cause is shown within fourteen (14) days after entry of this order as to why this Defendant should remain in the suit.

SO ORDERED.

ENTERED: December 4, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court